UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR RAY ROBINSON(#425796)** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO. 05-1016-RET-DLD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

**Signed in Baton Rouge, Louisiana, on September 23, 2008.**

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ARTHUR RAY ROBINSON(#425796)                              CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                                NO. 05-1016-RET-DLD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' motion to dismiss, rec.doc.no. 15, and the parties' cross-motions for summary judgment, rec.doc.nos. 34 and 56.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against then Secretary Richard Stalder, Warden Burl Cain, Lt. Kevin Benjamin, Classification Officer Paulina Sims and then Governor Kathleen Blanco, alleging that the defendants have violated the plaintiff's constitutional rights by exposing him to unconstitutional conditions of confinement in the form of second-hand smoke, which has caused him to sustain an aggravation of his medical condition.

Turning first to the pending Motion to Dismiss, rec.doc.no. 15, Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a Complaint if a plaintiff fails "to state a claim upon which relief can be granted."  In Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" Id., quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  See also Erickson v. Pardus, __ U.S. __, 127 U.S. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, in order to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or the" formulaic recitation of the elements of a

cause of action." Bell Atl. Corp. v. Twombly, supra. See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court stated that there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, but "something beyond ... mere possibility ... must be alleged." Id. The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, as amended, the plaintiff alleges that he is exposed to second-hand smoke from the cigarettes of co-inmates living with him in his dormitory, notwithstanding that the dormitory has been designated as a non-smoking housing unit. He asserts that this exposure has caused him to "gasp for breath and become nauseated", has aggravated his pre-existing bronchitis, and caused him to have allergic reactions in June, 2004. He acknowledges that he is receiving medical treatment and evaluation from LSP physicians, including periodic blood tests, medication, and at least two (2) diagnostic "cat-scrams". When he complains to physicians about his exposure to second-hand cigarette smoke, however, he is told by health care providers to speak to security officers about the improper smoking in the non-smoking dormitory. Notwithstanding, he complains that security officers at the prison do not enforce the no-smoking rules and that there is inadequate ventilation in the dormitory.

Initially, it appears that the plaintiff has named the State of Louisiana as a defendant in this proceeding. Under the Eleventh Amendment to the United States Constitution, however, an unconsenting state is immune from any lawsuit seeking monetary damage or equitable relief brought in federal courts by her own citizens as well as by citizens of another state. Edelman v.

Jordan, 415 U.S. 651, at 659, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for deprivation of civil rights under color of state law.  See, Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, supra.  Thus, absent consent by the state or congressional action, not here applicable, a state is immune from suit.  Therefore, the plaintiff's claims against the State of Louisiana are barred by the Eleventh Amendment and must be dismissed.

Turning next to the plaintiff's claims against defendants former Governor Kathleen Blanco, former Secretary Richard Stalder, Warden Burl Cain, and Classification Officer Paulina Sims, the Court finds that the plaintiff has failed to allege sufficient connexity between the actions of these defendants and the alleged constitutional violations complained of.  Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983).  In the absence of direct personal participation by a supervisory official in the alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  Lozano v. Smith, supra.  Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under § 1983.  Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying the foregoing standard, and upon a review of the plaintiff's Complaint, as amended, it appears that, other than in the caption thereof, the plaintiff has failed to include any allegations whatever against defendants Kathleen Blanco and Paulina Sims.  Accordingly, it is clear that the plaintiff has failed to allege the requisite personal participation by these defendants in the violations

alleged.

Further, with regard to defendants Stalder and Cain, the plaintiff's principal allegation relative to these defendants is that they responded unfavorably to administrative grievances which he filed complaining of ETS in the prison dormitories.[1]  The law is clear, however, that the plaintiff is not entitled to a favorable review of his administrative grievances or to a beneficial response thereto.  Further, there is no procedural due process right inherent in such a claim.  As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.  "[A] prison has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

(Emphasis in original).  Accordingly, the plaintiff's claims regarding the alleged failure of defendants Stalder and Cain to properly investigate or respond to his administrative grievances is without legal foundation and must be dismissed.

Finally, to the extent that the plaintiff's allegations against defendants Stalder and Cain may be interpreted as complaining of an alleged wrongful policy at LSP, there is no support for this claim in the plaintiff's allegations.  Pursuant to the plaintiff's own admissions, there is in fact a non-smoking policy at LSP which establishes the existence of non-smoking dormitories, and the plaintiff concedes that he has in fact been placed in a dormitory that has been designated as a non-smoking facility.  Further, it is undisputed that there are signs posted throughout the unit indicating that smoking is not allowed.  In this context, the law is clear that, in evaluating an inmate's claim

---

[1] The plaintiff specifically alleges that he wrote a letter to Warden Cain requesting a transfer to another non-smoking dormitory, to which letter defendant Cain responded that the plaintiff was in fact on backlog for a transfer to another dormitory.  The plaintiff has apparently since been granted the transfer sought.

of exposure to ETS, the existence of a prison policy which limits such exposure is an important factor in determining the potential liability of supervisory prison officials. Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). While prison officials acknowledge that inmates have occasionally been known to violate the no-smoking rules, they further indicate that offending inmates are punished when apprehended and that, in order to compel compliance, it is the plaintiff's obligation to bring violations to the attention of on-site security officers who have been tasked with enforcing the prison rules and policies. Although the plaintiff asserts that he has been loathe to take this action, apparently fearing reprisal from co-inmates, there is little that this Court can do to address this concern, and there is no indication in the record that any such reprisals have in fact occurred. And in any event, it appears from the record that the plaintiff was transferred, in late 2006, to another non-smoking dormitory to which he had long sought transfer. In short, there is no basis for concluding that defendants Stalder and Cain may be found liable for the imposition of an alleged wrongful policy. See Murrell v. Chandler, 2007 WL 869568 (E.D. Tex., March 21, 2007) (dismissing claim against supervisory employees for lack of personal involvement).

Turning to the plaintiff's claims against the remaining defendant, Kevin Benjamin, and addressing the parties' cross-motions for summary judgment in this context, the plaintiff's sole allegation in the Complaint relative to this defendant is that, after the plaintiff filed an administrative grievance, defendant Benjamin contacted the plaintiff and promised that remedial action would be taken and that when smokers were discovered in the dormitory, disciplinary action would be taken against them. The plaintiff complains that, notwithstanding this promise, defendant Benjamin failed to take appropriate action and "did not make no effort to improve this non-smoking dormitory."

In the Court's view, these are insufficient allegations upon which to base this federal civil rights lawsuit against defendant Benjamin.

The plaintiff moves for summary judgment relying specifically upon the pleadings, excerpts from his medical records, an article from the National Cancer Institute entitled, "Cancer Facts - Secondhand Smoke: Questions and Answers", the record of his administrative remedy

proceedings, LSP Directive No. 01.017 (relative to the LSP Smoking Policy), excerpts from his medical records, and his own affidavit and the affidavits of co-inmates.

The defendants move for summary judgment relying specifically upon the pleadings and the affidavit of Lt. Col. Troy Poret.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Federal Rules of Civil Procedure.

The United States Supreme Court applies a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment rights.  First a prisoner must prove objectively that he is "being exposed to unreasonably high levels of ETS [Environmental Tobacco Smoke]."  Helling v. McKinney, supra (emphasis supplied).  In assessing this first factor, the Court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm.  Id.  The Court must determine "whether society considers the risk ... to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Id. (emphasis in original).  Second, the prisoner must establish that prison officials have subjectively demonstrated "deliberate indifference" to his situation.  Id.  In this context, deliberate indifference requires that a prison official actually knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811.  The official must both be aware of facts from which an inference may be drawn that a substantial risk of serious harm exists, and he must actually draw the inference.  Id.  The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference.  Helling, supra.  See also Whitley v. Hunt, 158 F.3d 882 (5th Cir. 1998); Rochon v. City of Angola, 122 F.3d 319 (5th Cir. 1997), cert. denied, 523 U.S. 1075, 118 S.Ct. 1518, 140 L.Ed.2d 671 (1998); Wilson v. Lynaugh, 878 F.2d 846 (5th Cir.), cert. denied,

493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989).

The Fifth Circuit has recognized potential environmental tobacco smoke claims where exposure to tobacco smoke has been severe and sustained, such as when a plaintiff inmate shares close living quarters with smokers or is required to work in a smoke-filled environment.  Whitley v. Hunt, 158 F.3d 882 (5th Cir. 1998)(inmate assigned to a housing unit with smokers notwithstanding his request for a non-smoking unit); Rochon v. City of Angola, 122 F.3d 319 (5th Cir. 1997)(inmate required to live and work in "environments filled with tobacco smoke").  More recently, however, the Fifth Circuit and lower courts within this Circuit have repeatedly rejected ETS claims where the plaintiff inmate's exposure to tobacco smoke has been sporadic and episodic, even when it has caused discomfort such as coughing and nausea.  See, e.g., Todd v. Hawk, 263 F.3d 162 (5th Cir. 2001)(summary judgment granted dismissing inmate's claim of exposure to ETS in housing unit); Davies v. Fuselier, 252 F.3d 434 (5th Cir. 2001)(summary judgment granted dismissing claim of inmate housed in smoking dormitory for five months); Bloch v. Garrison, 2006 WL 623587 (E.D. Tex., March 10, 2006)(dismissal on 12(b)(6) motion to dismiss: "In this case, plaintiff alleges he was intermittently exposed to environmental tobacco smoke when inmates occasionally smoked in the housing unit, in violation of prison policy.  This limited exposure to smoke does not rise to the unreasonably high level of environmental tobacco smoke necessary to state an Eighth Amendment claim.  Nor does it violate contemporary standards of decency"); Harris v. Ashby (45 Fed.Appx. 325 (N.D. Tex. 2002).[2]  See also Callicutt v. Anderson, 48 Fed.Appx. 916 (5th Cir. 2002)(dismissal after bench trial of inmate's claim of exposure to ETS in housing unit);  Richardson v. Spurlock, 260 F.3d 495 (5th Cir. 2001)(dismissal as frivolous of inmate's claim of alleged exposure to ETS on bus rides to and from work); Murrell v. Chandler, 2007 WL 869568 (E.D. Tex., March 21, 2007)(summary

---

[2]     The Fifth Circuit has also cited with approval the Seventh Circuit case of Oliver v. Deen, 77 F.3d 156 (7th cir. 1996), wherein the Court rejected a claim by an asthma sufferer who complained of exposure to ETS while sharing a cell with a smoker for over four months, which exposure allegedly caused him to wheeze, gasp for breath, and suffer with dizziness and nausea. See Richardson v. Spurlock, supra, 260 F.3d at 499.

judgment granted dismissing claim of alleged exposure to ETS through ventilation system, in the prison bathrooms, and while standing with co-inmates waiting to eat or use the restrooms).

In the instant case, the plaintiff has failed to satisfy either prong of the Helling test. The plaintiff alleges that he has been exposed to ETS in a non-smoking dormitory as a result of periodic violations of prison rules by co-inmates and security officers who have engaged in smoking in the non-smoking dormitory. He has provided his own sworn statement and the affidavits of co-inmates who assert that inmates violate the rules by smoking in the bathroom and television room and other "hidden places ... out of the vision of the dorm officer". In the Court's view, this limited and sporadic exposure to environmental tobacco smoke does not rise to the unreasonably high level of ETS necessary to state an Eighth Amendment claim. Nor does it violate contemporary standards of decency, particularly in light of "the realities of prison administration", which must include a recognition that the "violation of institution rules is an unfortunate reality" in the management of penal institutions. See Helling, supra, 509 U.S. at 36-37. See also In re Omega Protein, Inc., 2007 WL 203967 (W.D. La., Jan. 23, 2007). The affidavit of Lt. Col. Troy Poret reflects that inmates caught smoking in non-smoking areas are subject to disciplinary action when apprehended and that inmates who smoke are often transferred out of non-smoking dormitories. Further, although the plaintiff has alleged that certain security officers have themselves smoked in the non-smoking dormitory or have neglected to enforce the no-smoking policy, the plaintiff has failed to name any such security officers as defendants in this proceeding, thereby failing to state a cause of action relative to such conduct.

Based on the foregoing, the Court concludes that the plaintiff has failed to satisfy the objective component of Helling by showing that he has been exposed to unreasonably high levels of ETS, and he has failed to satisfy the subjective component by establishing that defendant Kevin Benjamin has been deliberately indifferent to the plaintiff's health or safety. Accordingly, defendant Benjamin is entitled to summary judgment in connection with the plaintiff's claims.

<u>RECOMMENDATION</u>

It is the recommendation of the Magistrate Judge that the plaintiff's motion for summary judgment, rec.doc.no. 34, be denied, that the defendants' motions to dismiss and for summary judgment, rec.doc.nos. 15 and 56, be granted, and that this action be dismissed, without prejudice to any state law claims which the plaintiff may have.

Signed in Baton Rouge, Louisiana, on September 23, 2008.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**